UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KHALEED DIOMANDE #19-A-0348,

        Plaintiff,

-v-

ORC GABRIEL SOLOMON, DSP MORRIS
C.O. CALEB GOMES, DSA B. BLAZE
C.O. P. PASCUZZI, ORC PULLEN,
DSS J. LAMAY, RODRIQUEZ,
SGT. EXSTRAND, et al.,

        Defendants.

VERIFIED AMENDED COMPLAINT

9:22-CV-733(GTS/DJS)0

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
MAR 18 2024
AT____ O'CLOCK____
John M. Domurad, Clerk - Syracuse

ALL DEFENDANTS ARE BEING SUED IN THEIR
PERSONAL AND OFFICIAL CAPACITY

PRELIMINARY STATEMENT

Plaintiff, Khaleed Diomande, pro se, comes before this Honorable Court with his Verified Amended Civil Rights complaint pursuant to U.S.C. § 1983, 1988, seeking compensatory, and punitive damages, as well as legal cost for prosecuting the herein complaint for unwarranted, unnecessary use of force, unwarranted, unnecessary use of excessive force, failing to protect plaintiff from assault, failing to adequately, properly train and supervise subordinates and employees, retaliation, falsifying reports to cover up and justify their illegal acts, violation of due process rights to justify defendants violating plaintiff's rights.

VENUE

This unlawful act occurred in the Northern District, therefore, venue is proper under 28 U.S.C. § 1391(b).

## JURISDICTION

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 & 1343.

## PARTIES TO THIS ACTION

1. Plaintiff Khaleed Diomande, at all times mentioned thereafter, is a prisoner serving a sentence in the New York State Department of Community and Correctional Supervision, (DOCCS) and is currently housed in Green Haven Correctional Facility, P.O. Box 4000, Stormville, NY 12582.

2. Defendant DSS LaMay, was assigned as the Deputy Superintendent of Security, entrusted with supervising his /employees/subordinates, ensuring said employes were properly and adequately trained, and further failing to take corrective and preventive measures that would have prevented plaintiff from being brutally assaulted, allowing a practice and custom where unwarranted, unnecessary use of force, use of excessive force were allowed, as well as ordering and assisting in fabrication of reports to justify and cover up their illegal actions, as defendant LaMay acting alone and/or in conjunction with other named defendants and/or unidentified defendants did contribute and cause the violation of plaintiff's rights.

3. Defendant DSP Morris, was assigned as the Deputy Superintendent of Programs|' (DSP) and was Solmon's superior and supervisor, where upon information and belief, defendant Morris possessed information of incidents where Solomon has shown a tendency for prophecies for violence due to prior incidents had with other incarcerated individuals and/or civilians, and/or was aware of Solomom's violent prophecies, failing to take corrective and preventive measures, ensuring Solomon was adequately and properly trained in his job function and duties, and failing to properly supervise Solomon after having knowledge of previous violent incidents Solomon had, as Morris did contribute and/or cause the violations of plaintiff's rights.

4. Defendant ORC Pullen, while employed at the place of the incident|' was a supervisor correctional counselor|' who upon information and belief possessed information of Solomon's prophecies for violence due to previous incidences Solomon had with other incarcerated individuals and/or civilians, and failing to adequately and properly supervise Solomon, ensuring he was performing adequately in his job description, and not brutally assaulting incarcerated individuals, as defendant Pullen acting alone and/or in conjunction with other named defendants did contribute to the violation of plaintiff's rights.

5. Defendants Pascuzzi, Gomez and Exstrand at all times during the incident were correctional officials, who assisted in the brutal assault of plaintiff, acting in conjunction with each other and other named defendants, did falsify reports in order to justify the violation of plaintiff's rights, as there is a practice and custom where officers/officials are instructed to falsify reports to justify and cover up their illegal actions/inactions, as defendants participated in the brutal assault of plaintiff and/or failed to intervene, as the defendants acting alone and/or in conjunction with each other and other named defendants, did contribute and/or cause the violation of plaintiff's rights.

6. Defendant Gabriel Solomon, at all time relevant to the herein complaint was assigned as a counselor, and during the time of his function as a counselor, defendant exhibit a prophecies for violence towards incarcerated individuals and/or civilians, and the defendant knowing and intentionally brutally assaulted plaintiff in retaliation of grievance(s)/complaint(s) plaintiff filed against the defendant, as the defendant acting alone and/or in conjunction with other identified and unidentified defendants, did contribute and/or caused the violation of plaintiff's rights, allowing defendant to falsify and file a false report in attempt to justify and cover up his illegal acts.

7. Defendant Blaze, at all times relevant to the herein complaint was assigned as the hearing officer for plaintiff's disciplinary hearing and during said hearing, defendant was not fair or impartial, denying plaintiff's due process rights to call witnesses and access to relevant documentary evidence, knowingly and intentionally finding plaintiff guilty of the disciplinary charges in violation of plaintiff's due proces rights to cover up and justify Solomon and other defendant's violating plaintiff's rights, as defendant acting alone and/or in conjunction with other identified defendants, did contribute and/or cause the violation of plaintiff's rights.

8. Defendant Rodriquez at all times relevant was assigned as the review officer for disciplinary hearings, failed to notify plaintiff of the decision rendered on the appeal of defendant's Blaze disciplinary determination, defendant Rodriquez acting in conjunction with other named defendants contributed and/or cause the violation of plaintiff's rights, where defendant Rodriquez is working in conjunction with other defendants to cover up their illegal acts.

## PREVIOUS LAWSUIT IN STATE AND FEDERAL COURT

Plaintiff has never filed any civil litigations in State or Federal Court.

## EXHAUSTION OF REMEDIES

Plaintiff filed grievances and complaints concerning the herein matter.

## STATEMENT OF FACTS

9. On 10/26/21, approximately 12:05p.m., plaintiff has returned from the noon meal and locked in his cell on C2-gallery. A minute or so later, plaintiff's cell door opened up. Plaintiff stuck his head out the cell looking towards the recreation area where defendant Gomez was standing by the control panel for C2-gallery.

10. Defendant Gomez instructed plaintiff to enter the recreation room. Plaintiff dressed in his state issued greens and proceeded in the direction defendant Gomez was located. While walking towards Gomez, plaintiff heard Gomez state "here comes that piece of shit motherfucker." Plaintiff had no idea who Gomez was speaking to until plaintiff arrived at the recreation area/room where a large white male was taking off his button up shit, placing it over the phone boot area, under the Television, on the wall. Plaintiff was ordered to take a seat, and he complied.

11. Plaintiff observed defendant Solomon secure his shirt, and at this time Solomon in a black sleeveless undershirt turned to plaintiff. Solomon had a grievance in his hand that plaintiff had filed against the defendant. Defendant Solomon placed the grievance(s) on the desk and began pressing his knuckles on the desk top flexing his muscles while towering over plaintiff from the desk. Defendant Solomom began raising his voice in an aggressive manner, stating, "you fucking write a grievance against me?" "Do we have a problem you motherfucking grievance writer?!"

12. Plaintiff answered, no, and defendant Solomon repeated

his question two more times, at which time plaintiff stated, "I don't know." Defendant Solomon stated, "do you want to handle it so you wont have to write another grievance, or do I have to fuck you up, so you can't write another grievance?" Plaintiff respectfully asked, and stated to Solomon, "what does that mean?" Solomon looked at plaintiff, began charging around the desk, lunging at plaintiff with closed fits, striking plaintiff with several blows to his head and facial area, causing plaintiff to fall out the chair, to the ground. Plaintiff was stuck on his right side torso, collar bone/neck area, attempting to regain his balance once knocked to the floor. Solomon began striking plaintiff with numerous blows to his facial and head area, while instructing defendant Gomez to push the emergency response button.

13. Defendant Gomez joined in assaulting plaintiff, striking him all over his body, plaintiff attempted to cover up his face when Gomez grabbed plaintiff's waist then legs causing plaintiff to fall to the floor. Defendant Gomez pinned, turned plaintiff's legs in a painful position, while Solomon, who had landed in front of plaintiff, placing him in a choke hold with his right arm, and he used his left fist to repeatedly punch plaintiff to his facial and head areas. Solomon pressed plaintiff's left side of his face to his chest causing plaintiff breathing difficulties. Plaintiff managed to wiggle his way slightly, enabling him to breathe a little bit, while begging, crying for Solomon to stop beating him and his inability to breathe.

14. Plaintiff was brutally assaulted by defendants Solomon, Gomez, and Pascuzzi who joined in. Solomon continued to strike plaintiff from behind his head area, he was flat on the ground, when other officers/officials participated, kicking, beating plaintiff. Plaintiff was hit with a baton by defendant Gomez causing him to black out. When plaintiff came to, Solomon was kicking plaintiff in his testicles!' all over his body. A supervisor enetered asking what was going on. Plaintiff was lifted off of the floor!' Solomon looked at plaintiff with a smirk on his face and stated, "nice face motherfucker, have fun in SHU!" Plaintiff was escorted to medical and thereafter taken to SHU.

15. Plaintiff received injuries to his head, facial area, wrist!' neck all over plaintiff's body, chronic lower back pain, lacerations, as well as psychological, mental pain and discomfort, anxiety, depression, constant fear of being assaulted by correctional employees.

16. Plaintiff was issued a misbehavior report authored by defendant Solomon charging plaintiff with several rule violations. The report filed by defendant Solomon was fabricated and false!' as false reports were filed in order to cover up the defendant's illegal actions and justify the violation of plaintiff's rights.

17. Defendant blaze was assigned as the hearing officer|| (H.O.) and during the commencement of the hearing, plaintiff entered a plea of not guilty, requesting documentary evidence in the form of reports, Unusual reports, as well as requested witnesses. The hearing was adjourned.

18. Plaintiff was returned to the hearing where witnesses testified, giving conflicting testimony. Defendant Blaze failed to disclose documentary evidence in the form of reports, To and Froms, unusual incident reports pertaining to the incident. Plaintiff requested defendant recall a witness, and denied plaintiff request without issuing a justifiable reason for the denial.

19. Defendant Blaze and plaintiff had off the record conversations pertaining to the hearing, where defendant Blaze stated to plaintiff|| "you can call as many witnesses as you want and waste time|' I'm still finding you guilty, you assaulted a counselor," "I don't believe Solomon retaliated against you, you were upset because he did not put your numbers on your phone list, i know what this is about."

20. Defendant Blaze violated plaintiff's due process rights to call witness, as well as plaintiff's right to submit and present relevant documentary evidence, as the H.O. was not fair and impartial,. and ha|| a predetermined mind set, as the H.O. actions./inactions were done to cover up other named defendants illegal actions, and justify said illegal actions.

21. Plaintiff was found guilty of the fabricated, false MBR. Plaintiff filed an appeal of defendant's Blaze determination to Albany, where defendant Rodriques was assigned to review disciplinary appeals|' and render a determination within sixty (60) days, making plaintiff aware of the determination. Plaintiff did not become aware that Rodriquez had made a determination until the review of documents that the defendants disclosed recently, and in these documents were the decision defendant Rodriquez made denying plaintiff's appeal.

22. Defenadnt Rodriquez failed to make plaintiff aware of the determination in order for plaintiff to appeal Rodriquez determination via Article 78 proceeding, where there is a time requirement for filing Article 78 proceedings challenging disciplinary determination. Plaintiff was denied his right to appeal defendant Rodriquez denial of plaintiff's appeal. Upon information and belief, defendant Rodriquez communicated with named defendants concerning plaintiff's disciplinary hearing|' and acted in conjunction with said named defendants to cover up and justify these defendants violation of plaintiff's rights, by further violating plaintiff's due process rights. Defendant Rodriquez job function was to review plaintiff's appeal and notifying plaintiff as to the determination rendered, and Rodriquez failed to do so in this instance.

23. Plaintiff during his disciplinary proceedings requested an assistant, Sgt. Bailey was assigned. Sgt. Bailey spoke to plaintiff, making plaintiff aware that the administration were focused on defendant Solmon because Solomon has been involved in previous violent incidents with other incarcerated individuals.

24. Defendant Blaze actions in finding plaintiff guilty was punitive and done on the behest of defendant Solomon and/or other named defendants in order to cover up and justify defendants illegal acts.

25. While confined in SHU, plaintiff was unable to eat, sleep, was in constant fear for his life and safety. Plaintiff was on a hunger strike due to fear of eating the food because the officers were tampering with the food. There were high volume of noise all thorough the day and night, leaving plaintiff unable to read, concentrate, sleep. Plaintiff had repeated dreams of being beaten brutally.

26. Defendant Exstrand responded to the incident with plaintiff, where Extranda either participated and/or failed to intervene, restraining his subordinates from assaulting plaintiff. There were other officers/officials that responded to the incident, and participated in the brutal assault of plaintiff and/or failed to intervene, restraining their fellow employees from assaulting plaintiff.

27. Defendants Morris, Pullen and LaMay as Solomon and other named defendants and/or supervisors had knowledge and/or had access to reports/information pertaining to violent conduct of Solomon and/or defendants Gomez and Pascuzzi, and did nothing to ensure their subordinates were adequately and properly trained.

28. Defendant Morris and Pullen were Solomon's supervisor and were aware of Solomon's prophecies for violence based upon previous incidents where Solomon was involved in use of force against other incarcerated individuals and/or civilians. After being made aware of Solomon's prophecies for violence, defendants Morris and Pullen took no corrective and/or preventive measures, ensuring Solomon was adequately and properly trained in his job functions and job description, further failing to supervise Solomon, to ensure he was conducting himself in accordance to his job description and title, and not engaging in violent behavior. Defendants Morris and Pullen were grossly negligent in supervising Solomon.

29. The violation of plaintiff's rights were done pursuant to a continuing practice and custom of the officials at COXSACKIE.

30. Defendant LaMay allowed a continued practice and custom where employees brutalize incarcerated individuals, using excessive force, as well as falsifying reports to cover up and justify their illegal acts.

31. Defendant LaMay, job function as Deptuy Superintendent of Security possessed knowledge of the use of force incidents in the facility, and access to data that shows the number of use of force incidents that transpired within the facility prior to LaMay being assigned DSS, and during his time as DSS at COXSACKIE, where upon information and belief, LaMay would receive and/or had access to daily, weekly, monthly and yearly data that showed the number of use of force incidents.

32. Defendant LaMay could have prevented the brutal assault of plaintiff, by ensuring his employees were adequately trained and supervised in their job functions, as well as use of force matters, as well as their job descriptions and function. Armed with the knowledge of the custom and practice of employees to use excessive force and falsify reports to cover up their illegal acts, LaMay did nothing to attempt and/or correct the illegal practice and customs of his employees.

33. Defendant LaMay knew there was a likely possibility that his subordinates would engage in excessive use of force based upon that data he receives concerning use of force incidents, as LaMay knew of his employees propensity to engage in conduct causing plaintiff's injuries. Even after being made aware of the data that showed a pattern of use of force incidents by his employees, LaMay took no action to ensure his employees were adequately and properly trained, never questioning the high volume of use of force incidents.

34. Defendant LaMay was grossly negligent in supervising his employees/subordinates that committed the unlawful acts against plaintiff, as well as failing to ensure employees were adequately and properly trained, after being made aware of a pattern, of custom and practices of using excessive force, and fabricating reports to cover up and justify their illegal acts.

35. Upon information and belief, defendant LaMay allowed a continuing custom and practice where his employees were encouraged to falsify reports, allowed to use unnecessary, unwarranted excessive use of force, covering up said excessive use of force by falsifying reports.

36. Upon information and belief, defendant LaMay had knowledge and/or were aware of complaints/grievances where incarcerated individuals complained of employees falsifying reports to cover up and justify their illegal acts and failed to take and corrective measures.

### FIRST CAUSE OF ACTION

Defendant Solomon acting alone and/or in conjunction with other defendants intentionally retaliated against plaintiff due to grievances/complaints plaintiff filed against Solomon.

### SECOND CAUSE OF ACTION

Defendants Solomon, Gomes, and Pascuzzi acting alone and/or in conjunction with each other, knowingly and intentionally used unwarranted, unnecessary excessive force, brutally assaulting plaintiff, violating his rights.

## THIRD CAUSE OF ACTION

Defendant Exstrand acting alone and/or in conjunction with other unidentified defendants acting in conjunction with each other, participated in the assault of plaintiff, violating his right.

## FOURTH CAUSE OF ACTION

Defendants Morris, Pullen and LaMay acting alone and/or in conjunction with each other, were grossly negligent in supervising employees under their direction and control causing the violation of plaintiff's rights.

## FIFTH CAUSE OF ACTION

Defendant LaMAy acting alone and/or in conjunction with others failed to take corrective and preventive measures, ensuring plaintif's safety by ensuring his employees were adequately and properly trained in their job description, and requirements, allowing a continued custom and practice where excessive force is used, as well as falsifying reports to cover up their illegal acts.

## SIXTH CAUSE OF ACTION

Defendant Blaze, acting alone and/or in conjunction with others, knowingly and intentionally violated plaintiff's due process rights to call witness at the hearing, right to present documentary evidence, as well as right to an impartial hearing officer in order to cover up and justify Blaze subordinates violation of plaintiff rights.

## SEVENTH CAUSE OF ACTION

Defdendant Rodriquez acting alone and/or in conjunction with other

defendants knowingly and intentionally violated plaintiff's due process rights by failing to inform plaintiff of the decision that was rendered on his appeal within the prescribed time requirements set forth in defendant's Policy and Procedures.

### EIGHT CAUSE OF ACTION

Defendants Rodriquez knowingly and intentionally denied plaintiff acces to the court, by failing to notify plaintiff of the decision rendered on his appeal, giving plaintiff the opportunity to challenge Rodriquez's decision in a Article 78 proceedings.

### NINTH CAUSE OF ACTION

Defendant Exstrand acting alone and/or in conjunction with other unidentified defendants, knowingly and intentionally failed to intervene, refraining subordinates from brutally assaulting plaintiff.

### TENTH CAUSE OF ACTION

Defendants Blaze, Solomon, acting alone and/or in conjunction with each other willfully maliciously, and unlawfully confined plaintiff in segregration.

### ACTION REQUESTED

Pursuant to Rule 8, subd. A[3] of the Federal Rules of Civil Procedures, by form of deliberate indifference, recklessness, careless, callous and retaliatory acts of the defendants committed while acting under the Color of Law:

Plaintiff's state of present health, as well as future health is at risk due to the injuries plaintiff sustained while being brutally assaulted, as plaintiff experiences daily excruciating pain from the assault, as plaintiff has mental

injuries from the brutal assault where he is unable to sleep, has heighten anxiety, has constant nightmares. Plaintiff was wrongfully and illegally confined to the SHU, confined for 24 hours a day. Plaintiff was on a hunger strike while in SHU due to fear of being poisoned by the officials, he was unable to sleep, participate in programs, communicate with his family, attend religious services and events, congregate in a recreational setting with other incarcerated individuals, participate if the family reunion program, suffering from mental anguish, emotional stress due to the actions/inactions of the defendants.

Plaintiff seeks punitive danages in the amount of one million from each defendant; compensatory damages in the amount of one-million dollars from each defendant.

Jury Trial on all issues triable by jury.

i declare under the penalty of perjury that the foregoing is true and correct.

Dated:February  , 2024

VERIFICATION

STATE OF NEW YORK )
                  ) ss.:
COUNTY OF DUTCHESS)

Khaleed Diomande, being duly sworn, deposes and says:

I am the plaintiff in the foregoing proceedings, and I have read the foregoing Amended Complaint, and know the contents thereof.

The same is true to my knowledge, except as to those matters stated to be alleged upon information and belief, and as to those matters, plaintiff believe them to be true.

sworn to before me this
29 day of FEBRUARY, 2024
NOTARY PUBLIC

KHALEED DIOMANDE PLAINTIFF

PATRICK LEON MCNEIL
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01MC6324976
Qualified in Bronx County
My Commission Expires 08-24-2927

# AFFIDAVIT OF SERVICE

STATE OF NEW YORK )
) SS.:
COUNTY OF DUTCHESS )

Khaleed Diomande, being duly sworn, deposes and says:

I am the above mentioned Khaleed Diomande and I have served a copy of the following papers:

Verified Amended Civil Rights Complaint pursuant to U.S.C § 1983

Upon the following party(ies):

Daniel J. Stewart U.S. Magistrate Judge
U.S. District Court Northern District
100 S. Clinton Street P.O. Box 7367
Syracuse NY 13261

Ryan T. Donovan Attorney for Solomon
50 State Street Second Floor Albany NY 12207
Thomas Capezza Attorney for Gomes
Capezza Hill LLP 30 South Pearl Street
Suite P-110 Albany NY 12207

By placing the above in a post-paid envelope and depositing it in a United States Postal Service mailbox located at Green Haven Correctional Facility, Stormville, N.Y. 12582 on the ___ day of _____, 20___, as due and sufficient service.

_____

SWORN TO BEFORE ME THIS
29 DAY OF February, 20 24

_____
NOTARY PUBLIC

PATRICK LEON MCNEIL
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01MC6324976
Qualified in Bronx County
My Commission Expires 08-24-2022

Nathaniel Wade
Green Haven Correctional Facility
594 Rt 216
Stormville, New York 12582-0010



Daniel J. Stewart
U.S. Magistrate Judge
   Northern District
100 S. Clinton Street
   P.O. Box 7367
Syracuse, New York 13261